UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMAN ABERA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SAN DIEGO PACIFICVU LLC, et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 25-cv-01488-RBM-DEB<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [Doc. 3]**<br><br>**(2) DISMISSING COMPLAINT ON SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)(ii) [Doc. 1]**<br><br>**(3) DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AS MOOT [Doc. 2]**<br><br>**(4) DENYING MOTION FOR LEAVE TO ELECTRONICALLY FILE DOCUMENTS AS MOOT [Doc. 4]**<br><br>**(5) DENYING MOTION TO DISQUALIFY [Doc. 16]** |

This action relates to an unlawful detainer matter adjudicated in the Superior Court of California, County of San Diego ("San Diego Superior Court") and captioned *San Diego Pacificvu LLC v. Abera*, Case No. 24UD014810C (the "Unlawful Detainer Action"). (Doc. 1 at 2, 8; *see* Doc. 2 at 31.)

1

On June 18, 2025, Plaintiff Aman Abera ("Plaintiff"), proceeding *pro se*, filed the operative Complaint, alleging constitutional and state law claims arising out of the Unlawful Detainer Action ("Complaint").  (Doc. 1 at 4–5.)[1]  Along with his Complaint, Plaintiff filed an Emergency Ex Parte Application for Temporary Restraining Order and Order to Show Cause ("TRO Application") (Doc. 2), an Application to Proceed *In Forma Pauperis* ("IFP Application") (Doc. 3), and a Motion for Leave to Electronically File Documents ("E-File Motion") (Doc. 4).  On July 21, 2025, Plaintiff filed an Emergency Motion to Disqualify Pursuant to 28 U.S.C. § 455(a) ("Motion to Disqualify").  (Doc. 16.)

For the reasons discussed below, the Court **GRANTS** Plaintiff's IFP Application, **DISMISSES** this action for lack of subject matter jurisdiction, **DENIES** Plaintiff's TRO Application, **DENIES** Plaintiff's E-File Motion, and **DENIES** Plaintiff's Motion to Disqualify.

## I.     BACKGROUND[2]

Plaintiff brings the instant action against the following private individuals and entities (collectively, the "Private Defendants"): (1) San Diego PacificVU LLC, Greg Hinchy, and J. William Hinchy (the "PacificVU Defendants") who were Plaintiff's landlords and the plaintiffs in the Unlawful Detainer Action; (2) attorney Charles Gregory Billinger and his law firm Kimball, Tirey & St. John LLP who represented the PacificVU Defendants in the Unlawful Detainer Action; and (3) registered process server Nicole Marie Rivera ("Defendant Rivera") who served a Three-Day Notice to Pay Rent or Quit on Plaintiff.  (Doc. 1 at 4–5.)  He also brings claims against public officials and entities, including San Diego Superior Court Judge Peter F. Murray and Judge Blaine K. Bowman (the "Judicial Defendants") and the San Diego County Sheriff's Department.  (*Id.*)

---

[1] The Court cites the CM/ECF electronic pagination unless otherwise noted.

[2] The Court's summary of Plaintiff's Complaint below reflects Plaintiff's factual and legal allegations, not conclusions of fact or law by this Court.

### A. Factual Background

Plaintiff alleges that he "is a tenant, community advocate, and documented whistleblower whose protected disclosures exposed public corruption, regulatory and clinical research fraud, and systemic judicial misconduct. These disclosures implicated institutional actors within the University of California system and associated state agencies, placing Plaintiff at direct risk of retaliation." (Doc. 1 at 6.) In 2017, Plaintiff began his tenancy at a residential unit owned and operated by the PacificVU Defendants. (*Id*.)

On September 16, 2024, the PacificVU Defendants issued a Three-Day Notice to Pay Rent or Quit against Plaintiff and filed the initial complaint in the Unlawful Detainer Action shortly thereafter. (*Id*. at 8.) Trial proceedings for the Unlawful Detainer Action commenced on or about April 1, 2025. (*Id*. at 12.) The San Diego Superior Court issued the Writ of Possession ("Writ") on April 21, 2025 and entered judgment against Plaintiff on April 25, 2025. (*Id*.)

Plaintiff alleges his "eviction was not merely the result of fraudulent service and procedural defects—it was actively facilitated through systemic judicial suppression and manipulation of court records, ensuring Plaintiff[']s objections and legal remedies were foreclosed before any meaningful review could occur." (*Id*. at 10.) He claims that "the [unlawful detainer] proceeding was tainted by fraud and fundamental due process violations," including improper service of an allegedly facially defective eviction notice, and "deliberate suppression tactics designed to obstruct appellate review through fabricated timelines and misclassified records, suppress key filings and jurisdictional challenges, and accelerate enforcement in violation of statutory mandates and constitutional protections." (*Id*.) Such alleged tactics include the San Diego Superior Court's denial of Plaintiff's motions "without substantive review," as well as a judge's instruction to "bypass e-filing protocols and hand-deliver the proposed judgment." (*Id*. at 12.)

On May 1, 2025, Plaintiff filed a Notice of Appeal with the California Court of Appeal, Fourth District ("Court of Appeal"), which was denied on May 13, 2025. (*Id*. at 11.) On May 28, 2025, Plaintiff filed a petition for emergency relief with the Court of

Appeal, which was also denied that same day. (*Id*. at 15.) The Sheriff delivered a Notice to Vacate to Plaintiff the next day. (*Id*.)

### B.  Procedural History

On June 5, 2025, Plaintiff initiated a different related action before this Court. *See Abera v. PacificVU LLC et al.*, Case No. 25-cv-01437-RBM-DEB (S.D. Cal. June 5, 2025), ECF No. 1 (the "Related Case"). There, Plaintiff filed a complaint, an Application to Proceed *In Forma Pauperis* ("IFP"), and an Emergency Ex Parte Application for Temporary Restraining Order and Order to Show Cause. *See id*., ECF Nos. 1–3.

On June 9, 2025, before the Court issued a ruling on the motions pending in the Related Case, Plaintiff filed a Notice of Appeal with the Ninth Circuit appealing this Court's "effective . . . constructive denial" of the Emergency Ex Parte Application. *Id*., ECF No. 6 at 2. On June 10, 2025, this Court denied Plaintiff's first IFP Application in the Related Case for failure to adequately allege indigency but granted Plaintiff leave to file an amended application. *Id*., ECF No. 8 at 4 ("If Plaintiff wishes to proceed IFP, he may file a renewed IFP application that provides clear and legible answers and sufficiently demonstrates indigency."). The Ninth Circuit subsequently denied his appeal for lack of jurisdiction on June 16, 2025. *Id*., ECF No. 12 at 1.

Instead of filing an amended application, Plaintiff initiated the instant action as a new case on June 18, 2025. (*See* Doc. 1-2 at 2). On June 20, 2025, this action was identified as related to Plaintiff's previous action. (Doc. 5.) Plaintiff filed an objection to the transfer that same day. (*See* Doc. 6.) On June 30, 2025, this action was transferred to the undersigned pursuant to Local Rule 40.1. (Doc. 8 at 1.) On July 1, 2025, and again before the Court issued a ruling on the motions currently pending, Plaintiff filed a second Notice of Appeal of the present action with the Ninth Circuit also based on the Court's "constructive denial" of Plaintiff's TRO Application. (Doc. 9 at 2.) The Ninth Circuit again denied his appeal for lack of jurisdiction on July 21, 2025. (Doc. 14.)

In the operative Complaint, Plaintiff asserts three civil rights claims against Defendants for alleged violations of the First and Fourteenth Amendments (Doc. 1 at 19–

27), and four state law claims against the PacificVU Defendants (*id*. at 27–30). Plaintiff again asks this Court to "declare [that] the [Unlawful Detainer Action] proceedings and post-trial enforcement were procedurally defective and constitutionally infirm; [to] quash the April 21, 2025 Writ of Possession as void ab initio; [to] enjoin any further enforcement actions stemming from the unlawful judgment; [and to] recognize the systemic suppression campaign and provide declaratory relief under 42 U.S.C. § 1983." (*Id*. at 16 (cleaned up).)

## II.  IFP APPLICATION

All parties instituting any civil action, suit, or proceeding in a District Court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[3]  *See* 28 U.S.C. § 1914(a).  A court may authorize the commencement of a suit without prepayment of the filing fee if the plaintiff submits a signed affidavit "that includes a statement of all assets[,] which shows [an] inability to pay initial fees or give security." S.D. Cal. Civ. R. 3.2(a).  The facts of an affidavit of poverty must be stated "with some particularity, definiteness, and certainty." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (quoting *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981)). The determination of indigency falls within the district court's discretion. *Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991), *rev'd on other grounds*, 506 U.S. 194 (1993) ("[§] 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement of indigency.").

It is well-settled that a party need not be completely destitute to proceed IFP, but he must adequately prove his indigence. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948).  To satisfy the requirements of 28 U.S.C. § 1915(a), "[a]n affidavit in support of an IFP [motion] is sufficient where it alleges that the affiant cannot pay the court

---

[3] Civil litigants must pay an administrative fee of $55 in addition to the $350 filing fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)).  The additional $55 administrative fee does not apply to persons granted leave to proceed in forma pauperis ("IFP"). *Id*.

costs and still afford the necessities of life." *Escobedo*, 787 F.3d at 1234 (citing *Adkins*, 335 U.S. at 339); *see also McQuade*, 647 F.2d at 940 (an adequate affidavit should state supporting facts "with some particularity, definiteness and certainty"). No exact formula is "set forth by statute, regulation, or case law to determine when someone is poor enough to earn IFP status." *Escobedo*, 787 F.3d at 1235. Consequently, courts must evaluate IFP requests on a case-by-case basis. *See id*. at 1235–36 (declining to implement a general benchmark of "twenty percent of monthly household income"); *see also Cal. Men's Colony*, 939 F.2d at 858 (requiring that district courts evaluate indigency based upon available facts and by exercise of their "sound discretion") (citation omitted).

In his IFP Application, Plaintiff declares he is experiencing financial hardship. (Doc. 3 at 5.) He lists $833.33 as his monthly income from employment and $2,820 as his monthly expenses. (*Id*. at 1, 4.) Plaintiff is not owed any money and does not have any dependents who rely on him for financial support. (*Id*. at 3.) He has $300 in a checking account with USAA Banking and does not anticipate any changes to his income or expenses in the next twelve months. (*Id*. at 2, 5.) Based on his IFP Application, the Court finds that Plaintiff has sufficiently shown an inability to pay the $405 filing fee pursuant to § 1915(a). Accordingly, Plaintiff's IFP Application is **GRANTED**.

### III. SCREENING UNDER 28 U.S.C. § 1915(e)

A complaint filed by any person proceeding IFP pursuant to 28 U.S.C. § 1915(a) is subject to mandatory, *sua sponte* review and dismissal by the Court if the action: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim."). "[T]he sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

In addition, "[f]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Courts address the issue of subject matter jurisdiction first, as "[t]he requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

### A.   Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under the *Rooker-Feldman* doctrine, district courts lack subject matter jurisdiction to review de facto appeals from state court judgments. *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 (1983). A federal action is a "de facto appeal" of a state court decision when the plaintiff "complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003). Lower federal courts cannot adjudicate actions brought by "state-court losers" seeking relief from "state-court judgments rendered before the district court proceedings commenced." *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobile Corp. v. Saudi Basic Indus., Corp.*, 544 U.S. 280, 284 (2005)). This is true even when the challenge to the state court decision involves federal constitutional issues. *See Dubinka v. Judges of the Superior Ct.*, 23 F.3d 218, 221 (9th Cir. 1994); *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986).

District courts must also refuse to decide any issue raised in the suit that is "inextricably intertwined" with the state court proceedings. *Noel*, 341 F.3d at 1158; *see*

*also Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013) ("The 'inextricably intertwined' language . . . is not a test to determine whether a claim is a de facto appeal, but is rather a second and distinct step in the *Rooker-Feldman* analysis."). "Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined." *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001).

Both conditions are present here. First, this action constitutes a de facto appeal of the San Diego Superior Court's judgment in the Unlawful Detainer Action. In the Complaint, Plaintiff requests declaratory, injunctive, and equitable relief including that this Court "[d]eclare the unlawful detainer judgment, [Writ], and eviction . . . were obtained through fraud [and] procedural sabotage" and that it quash the Writ issued by the state court. (Doc. 1 at 11, 33.) Because Plaintiff seeks a remedy by which this Court would invalidate and reverse a state court's judgment, he asks the Court to "review the final determinations of a state court in judicial proceedings," which is at the core of *Rooker-Feldman*'s prohibition. *In re Gruntz*, 202 F.3d 1074, 1079 (9th Cir. 2000); *see Richards v. Mercy Hous. Cal.*, No. C 12-00234 JW, 2012 WL 174186, at *2 (N.D. Cal. Jan. 18, 2012) ("[I]nsofar as [he] requests that the Court 'stop' the eviction," Plaintiff is evidently "seeking relief from the state court judgment.").

Additionally, Plaintiff's claims are "inextricably intertwined with the merits of a state-court judgment" because they "succeed[] only to the extent that the state court wrongly decided the issues before it." *Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir. 2012) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)). Although Plaintiff now claims that the unlawful detainer proceedings and the issuance of the Writ violated his First and Fourteenth Amendment rights, his claims "rely on the premise that Plaintiff . . . [was] in fact entitled to remain in possession," meaning that the judgment in the state court was "wrongful." *Koshak v. Cnty. of Orange*, No. SACV 13-01732-CJC(ANx), 2014 WL 12626351, at *3 (C.D. Cal. Jan. 24, 2014), *aff'd*, 637 F. App'x 323 (9th Cir. 2016); *see also Iula v. Voos*, No. 23-CV-2277 JLS (AHG), 2024 WL 171395,

at *7 (S.D. Cal. Jan. 16, 2024) (citation omitted) ("The issue of enforcing an unlawful detainer judgment is inextricably intertwined with the judgment itself."). This Court therefore lacks jurisdiction over this action pursuant to the *Rooker-Feldman* doctrine.

### B.  Failure to State a Claim

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The Court "ha[s] an obligation where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). However, the Court may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

First, Plaintiff cannot pursue a lawsuit against the Judicial Defendants because they are absolutely immune from suit insofar as they were acting in their judicial capacity. Judicial immunity shields judges in all but two circumstances: (1) when a judge's actions are "nonjudicial," meaning the actions are "not taken in the judge's judicial capacity," and (2) when a judge's actions, "though judicial in nature, [are] taken in the complete absence of all jurisdiction." *Acres Bonusing, Inc v. Marston*, 17 F.4th 901, 915 (9th Cir. 2021). "A judge is absolutely immune from liability for [his] judicial acts even if [his] exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978). Courts "broadly construe the scope of immunity," and "exceptions to immunity should be narrow." *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (citing *Adams v. McIlhany*, 764 F.2d 294, 297 n.1 (5th Cir. 1985)). In this case, Plaintiff challenges the Judicial Defendants' actions taken in the course of adjudicating

proceedings in the Unlawful Detainer Action. (*See* Doc. 1 at 8, 10–12.) Such alleged conduct falls directly within the scope of absolute judicial immunity. Because Plaintiff seeks monetary relief from Defendants who are immune from such relief, his claims against the Judicial Defendants are legally frivolous and must be dismissed. *See Stump*, 435 U.S. at 356–57; *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (finding a complaint is frivolous "where it lacks an arguable basis either in law or fact"); *see e.g.*, *Mainez v. Gore*, Case No.: 3:17-cv-01359-JAH-JLB, 2017 WL 4005269, at *5 (S.D. Cal. Sept. 11, 2017) (finding § 1983 claims for monetary damages against a judge based on the sentencing and presiding over criminal proceedings were subject to *sua sponte* dismissal as frivolous).

Second, Plaintiff's claims against the Sheriff's Department are similarly barred. Under California law, the Sheriff is statutorily required to levy on a writ of possession and is thereby "immune from liability in the execution of 'all process and orders regular on their face and issued by competent authority, whatever may [be] the defect in the proceedings upon which they were issued.'" *Lyons v. Santa Barbara Cnty. Sheriff's Off.*, 231 Cal. App. 4th 1499, 1503 (2014) (citing Cal. Code Civ. Proc. § 262.1; *George v. Cnty. of San Luis Obispo*, 78 Cal. App. 4th 1048, 1054–1055 (2000)). To the extent Plaintiff alleges the Sheriff's Department ignored an automatic stay arising from his notice of appeal, Plaintiff cites no authority, and the Court has located none, that imposes a legal duty on the Sheriff to investigate the legality of court orders before enforcement. *See Engebretson v. Mahoney*, 724 F.3d 1034, 1039–41 n.7 (9th Cir. 2013); *Arrieta v. Mahon*, 31 Cal. 3d 381, 392 (1982) (finding the function of the Sheriff is to execute writs or other orders that are "regular on their face and issued by competent authority," not to determine "the merits of the underlying action"). Plaintiff also does not allege any factual basis to argue that the state court's orders are facially invalid. *See Engebretson*, 724 F.3d at 1039–41 n.7 (holding officials immune for executing facially valid court order); *George*, 78 Cal. App. 4th at 1054 (immunizing Sheriff from liability for executing orders, including writ of possession of real property, that "are regular on their face"). Like the Judicial Defendants, Plaintiff's claims against the Sheriff must also be dismissed for seeking relief from immune

1  defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).  *See Brincken v. Royal*, No.
2  2:12–cv–2599–MCE–CKD PS, 2013 WL 211245 at *3 (E.D. Cal. Jan. 10, 2013) (finding
3  sheriff deputies were entitled to quasi-judicial immunity and dismissing § 1983 claims
4  based on their service of an eviction notice and writ of possession pursuant to a court order).

5        Finally, Plaintiff fails to state his civil rights claims against the Private Defendants
6  because § 1983 reaches only actions taken "under color" of state law and generally does
7  not apply to private individuals.  *See Taylor v. First Wyo. Bank, N.A.*, 707 F.2d 388, 389
8  (9th Cir. 1983).  "A private action may constitute an action under color of state law if the
9  private person willfully participates in joint action with the state or its agents. . . . [or] if it
10 constitutes the exercise of 'some power delegated to [the private person] by the state which
11 is traditionally associated with sovereignty' or is 'traditionally exclusively reserved to the
12 state."  *Id*. (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)).  Here,
13 attorney Charles Gregory Billinger and his law firm's participation as counsel in the
14 eviction proceedings does not demonstrate action under color of state law.  Defendant
15 Rivera's allegedly improper service of an eviction notice also does not constitute a state
16 action.  Although Plaintiff alleges that Judge Bowman's instruction to hand deliver the
17 judgment confirms the existence of a "post-trial judicial collusion," such allegations do not
18 support a plausible inference of joint action or otherwise support the elements of a state
19 action.  The Private Defendants' alleged actions also do not amount to violations of
20 Plaintiff's federal constitutional rights, as required to allege a § 1983 claim.  *See Long v.*
21 *City of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) ("To prevail under . . . § 1983, a
22 plaintiff must prove that he was 'deprived of a right secured by the Constitution or laws of
23 the United States, and that the alleged deprivation was committed under color of state
24 law.'") (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

25     **C.**    **Leave to Amend**

26       Because the jurisdictional deficiencies cannot be cured by amendment, the Court
27 finds that amendment in this case would be futile.  *See Klamath-Lake Pharm. Ass'n v.*
28 *Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that "futile

amendments should not be permitted.") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment."). Additionally, no amendment could cure Plaintiff's claims against the Private Defendants or overcome the Judicial Defendants and the Sheriff's immunity from suit. Accordingly, the Complaint is **DISMISSED without prejudice and without leave to amend** pursuant to 28 U.S.C. §§ 1915(a), (e)(2)(B)(ii). *See Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) ("Dismissals for lack of jurisdiction should be . . . without prejudice so that a plaintiff may reassert his claims in a competent court.") (cleaned up).

## IV. TRO APPLICATION

In the TRO Application, Plaintiff requests that this Court stay "all enforcement proceedings related to the Writ" and "[t]ransfer appellate review from the Appellate Division of the Superior Court to the Fourth District Court of Appeal." (Doc. 2 at 4.) As a preliminary matter, the TRO Application is moot because Plaintiff's Complaint has been dismissed and there is no underlying operative complaint. *See Jones v. Fed. Corr. Ctr. Med. Dep't*, No. 20-CV-1385 JLS (BLM), 2020 WL 6942519, at *4 (S.D. Cal. Nov. 25, 2020) (denying prisoner's IFP motion and denying the TRO motion as moot); *Olajide v. Brown*, Case No. 18-cv-03991-CRB, 2018 WL 3328227, at *3 (N.D. Cal. July 6, 2018) (dismissing the complaint and denying the TRO motion as moot). Nonetheless, for the reasons set forth below, the Court finds the TRO Application lacks merit.

### A. Legal Standard

Federal Rule of Civil Procedure 65(b) governs the issuance of a temporary restraining order ("TRO"). The "underlying purpose" of a temporary restraining order is to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing may be held. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). The standard for a TRO is identical to the standard for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). To obtain a TRO or a preliminary injunction, Plaintiff "must establish that [he] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013) (quoting *Winter*, 555 U.S. at 20 (the "*Winter* factors")). The "[l]ikelihood of success on the merits 'is the most important' *Winter* factor[.]" *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)).

### B.     Likelihood of Success on the Merits

For the reasons discussed *supra* (*see* Sec. III.A), the Court concludes it does not have the authority to grant Plaintiff's requested relief under the *Rooker-Feldman* doctrine. As the Court has no jurisdiction to review or invalidate the state court's judgment, Plaintiff cannot demonstrate a likelihood of success on the merits, or even a "serious question," as to his claims. *See Pimentel v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) ("[A]t an irreducible minimum the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation."); *see, e.g., In re Bauman*, No. 3:24-CV-1564 JLS (BLM), 2024 WL 4647299, at *6 (S.D. Cal. Oct. 31, 2024) (holding *Rooker-Feldman* precluded TRO as plaintiff sought to prevent "the state court's eviction order from being carried out," and his challenge was based on the court clerk's error); *Lara v. Servs.*, No. 12cv904-LAB (POR), 2012 WL 12872451, at *1 (S.D. Cal. June 5, 2012) (denying injunction where "[plaintiff] had the opportunity to contest his eviction in San Diego Superior Court, and he lost. The *Rooker-Feldman* doctrine bars him from seeking relief from that loss in federal court."). Where, as here, the moving party fails to meet his burden on the threshold inquiry of likelihood of success on the merits, "the court need not consider the other factors[ ] in the absence of serious questions going to the merits." *Disney Enters.*, 869 F.3d at 856 (cleaned up). Accordingly, the TRO Application is **<u>DENIED</u>**.

## V. MOTION TO DISQUALIFY

Plaintiff also filed a Motion to Disqualify seeking to disqualify the undersigned from presiding over this action. (Doc. 16.) The Motion to Disqualify is based primarily on this Court's previous order in the Related Case. (*Id*. at 2–3.) There, the Court denied his first IFP application for failure to adequately prove his indigency pursuant to 28 U.S.C. § 1915(a), dismissed the Complaint for failure to pay the full civil filing fee required by 28 U.S.C. § 1914(A), and denied his first TRO application as moot. *Abera v. PacificVU LLC et al.*, Case No. 25-cv-01437-RBM-DEB (S.D. Cal. June 10, 2025), ECF No. 8.

Section 455 requires a judge to "disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned," including where the judge "has a personal bias or prejudice concerning a party . . . ." 28 U.S.C. § 455(a), (b)(1). The standard for disqualification is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008). A "reasonable person" is defined as a "well-informed, thoughtful observer," as opposed to a "hypersensitive or unduly suspicious person." *Clemens v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 428 F.3d 1175, 1178 (9th Cir. 2005) (cleaned up).

The moving party must allege "facts that fairly support the contention that the judge exhibits bias or prejudice directed toward a party that stems from an extrajudicial source." *United States v. Sibla*, 624 F.2d 864, 868 (9th Cir. 1980). This "generally requires as the basis for recusal something other than rulings, opinions formed or statements made by the judge during the course of the trial." *United States v. Holland*, 519 F.3d 909, 914–15 (9th Cir. 2008). The Supreme Court has held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see Leslie v. Grupo ICA*, 198 F.3d 1152, 1160 (9th Cir. 1999) (holding that recusal is not warranted on the ground that the judge has previously ruled adversely to the moving party). "Almost invariably, they are proper grounds for appeal, not for recusal." *Id*.

Here, the principal basis for Plaintiff's Motion to Disqualify are the Court's rulings that displeased him. Indeed, Plaintiff argues the Court's rulings in the Related Case were "premature," that this Court "ignored" his affidavit filed in support of his first IFP application, and that this Court "failed to act on the TRO . . . or IFP." (Doc. 16 at 3.) Specifically, Plaintiff claims that the Court dismissed his initial complaint "without screening . . ., without adjudicating the concurrently filed TRO/OSC, with no opportunity to cure minor IFP deficiencies." (*Id*. at 2 (cleaned up).)

Contrary to Plaintiff's assertions, the Court thoroughly analyzed his affidavit and denied the IFP application based on the affidavit's inadequacy. *See Abera v. PacificVU LLC et al.*, Case No. 25-cv-01437-RBM-DEB (S.D. Cal. June 10, 2025), ECF No. 8 at 3–5. He was also granted leave to "file a renewed IFP application providing clear and legible answers." *Id*. at 4–5. Instead of complying with the Court's Order, Plaintiff attempted to circumvent the Court's ruling by commencing a new action. (*See generally* Doc. 1.)

Plaintiff also takes issue with the transfer of the instant action under this District's low number rule. (Doc. 16 at 2–3.) He contends the transfer order issued on June 30, 2025 "foreclos[ed] meaningful objection before finalization" because it was signed at an earlier date. (*Id*.) However, Plaintiff did file an objection which was considered and found to be without merit because he failed to "set[ ] forth reasons that the case does not qualify as a related case under these rules." S.D. Cal. Civ. R. 40.1(g); *see* S.D. Cal. Civ. R. 40.1(e) (outlining criteria for related cases); S.D. Cal. Civ. R. 40.1(i) ("The judges assigned to the cases identified by counsel as related *will decide if the cases are related within seven days after the response is due*. If all of the judges agree that the appropriate criteria are met, a low number order will issue.") (emphasis added). Finally, Plaintiff asserts the undersigned "holds familial and institutional affiliations with public bodies implicated in [his] whistleblower disclosures" but provides no argument or explanation as to how the alleged "affiliations" undermine this Court's neutrality in the instant action. (Doc. 16 at 3.)

The Court therefore finds that no reasonable person could conclude the undersigned's conduct in presiding over this action, and the Related Case, has

demonstrated bias or prejudice, or the appearance thereof, that would require disqualification. *See Holland*, 519 F.3d at 913; *Perry v. Schwarzenegger*, 630 F.3d 909, 916 (9th Cir. 2011) ("[While] it is . . . important that judges be and appear to be impartial[,] [i]t is also important . . . that judges not recuse themselves unless required to do so, or it would be too easy for those who seek judges favorable to their case to disqualify those that they perceive to be unsympathetic merely by publicly questioning their impartiality."). Accordingly, Plaintiff's Motion to Disqualify is **DENIED**.

## VI.   CONCLUSION

For the reasons set forth above, the Court **ORDERS** as follows:

1. Plaintiff's IFP Application (Doc. 3) is **GRANTED**.

2. The Complaint is **DISMISSED without prejudice and without leave to amend** under 28 U.S.C. § 1915(e)(2)(B)(ii) for lack of federal subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3), for failure to state a claim, and for seeking relief against immune defendants.

3. In light of the Court's finding that it lacks subject matter jurisdiction, Plaintiff's TRO Application (Doc. 2) is **DENIED** and Plaintiff's E-File Motion (Doc. 4) is **DENIED AS MOOT**. *See e.g.*, *Dudash v. Ulloa*, Case No.: 3:25-cv-1269-CAB-BLM, 2025 WL 1663395, at *2 (S.D. Cal. June 11, 2025) (denying pro se plaintiff's motion for leave to electronically file documents as moot upon dismissal of complaint).

4. Plaintiff's Motion to Disqualify (Doc. 16) is **DENIED**.

5. The Court **CERTIFIES** that an IFP appeal would not be taken "in good faith" pursuant to 28 U.S.C. § 1915(a)(3).

**IT IS SO ORDERED**.

DATE: July 25, 2025

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE